## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| CARLOS HUMBERTO GALLO VAZQUEZ, <br><br> Plaintiff, <br><br> v. <br><br> DEFENDANT NAGEL, in his individual and official capacities as L.T.; GUNNAR KRUGER, in his individual and official capacities as counselor; and C. GREINER, in his individual and official capacities, <br><br> Defendants. | CASE NO. 10-4217 (JNE/TNL) <br><br><br><br> **REPORT** <br> **&** <br> **RECOMMENDATION** |

Carlos Humberto Gallo Vazquez, 20063-424, Rochester Federal Medical Center, P.O. Box 4000, Rochester, MN 55903, pro se Plaintiff;

Mary J. Madigan, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Defendants.

## I.    INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants' Motion to Dismiss (Docket No. 23).  This action has been referred to the magistrate judge for report and recommendation to United States District Court Judge Joan N. Ericksen under 28 U.S.C. § 636 and Local Rule 72.2(b).  Based upon the record and memoranda, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to

Dismiss (Docket No. 23) be **GRANTED**, and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

## II.    BACKGROUND

Plaintiff Carlos Humberto Gallo Vazquez, an inmate at the Federal Medical Center in Rochester, Minnesota, filed his Complaint, dated October 5, 2010, against Defendants Nagel, Gunnar Kruger, and C. Greiner, in their individual and official capacities.[1] *See* Docket No. 1.  This Court has construed Plaintiff's Complaint liberally and has attempted to organize Plaintiff's Complaint into cogent allegations and claims.

### a.  Defendant Nagel

Plaintiff's claims against Defendant Nagel seem to arise out of four different events.[2]  First, Plaintiff alleges that in March 2010 Defendant Nagel ordered a search of Plaintiff's room.  Compl. at 1, Oct. 5, 2010; Docket No 1.  During the search numerous items were confiscated, but all of the items were returned except for a pair of sunglasses that Defendant Nagel mailed "home."  *Id.*  Plaintiff also includes an administrative complaint document, which states "your glasses were returned to you per Lt. Nagle." Docket No. 1-2.

---

[1] Defendants further identified the named Defendants as Devin Nagle, a lieutenant at the FMC; Gunnar Kruger, a correctional counselor at the FMC; and Christopher Grainer, a Bureau of Prison intelligence analyst. Def.'s Mem. at 1, May 16, 2011.  This Court will use the spelling "Nagel" because that is the spelling used by Plaintiff.

[2] In addition to the allegations listed, Plaintiff generally states that a "lieutenant" received his legal papers in violation of Plaintiff's rights. Aff. Vazquez, at ¶ 33. This Court does not ascribe this allegation to Defendant Nagel.

Second, Plaintiff states that in May 2010 his property was inventoried and stored. *Id.* When his property was returned from storage, Plaintiff's gold chain was missing. *Id.* at 2. Defendant Nagel was responsible for the investigation into Plaintiff's missing gold chain. *Id.* Defendant Nagel refused to provide Plaintiff with any report of the outcome of the investigation. *Id.*

Third, Plaintiff claims that in September 2010 his room was searched again on Defendant Nagel's instructions. *Id.* A watch that was "out in the open, unaltered, without any signs of alterations, and had [Plaintiff's] inmate registration number" was confiscated and given to Defendant Nagel. *Id.* Defendant Nagel would not return the watch, refused to acknowledge a receipt as Plaintiff's proof of the watch's purchase, and requested that Plaintiff sign a form stating that the watch was contraband. *Id.*

Finally, Plaintiff asserts that Defendant Nagel "exceeded his authority by taking . . . disciplinary action against [Plaintiff] without giving [Plaintiff] an incident report." *Id.* at 5. The "disciplinary action" may refer an event in which Plaintiff "started to file [a] lawsuit on October 28 of 2009." *Id.*; *see also id.* at 2-3. This filing of a lawsuit is discussed in greater detail later in this Report and Recommendation.

Based upon the above allegations, Plaintiff contends that Defendant Nagel is constantly harassing Plaintiff, which constitutes a "use[] of force without any legitimate penological purpose." *Id.* at 2-3. Plaintiff further contends that Defendant Nagel's actions "constitute abuse of his authority, continued retaliation and theft, and violated [Bureau of Prison] policy and procedures." *Id.* at 3. Plaintiff further alleges that Defendant Nagel "malicious[ly] and sadistically inflict[ed] . . . psychological injury." *Id.*

at 3.  Consequently, Plaintiff contends that Defendant Nagel's actions violate Plaintiff's rights under the Eighth Amendment of the United States Constitution.  *Id.* at 3.  Plaintiff requests that Defendant Nagel "be investigated" and "be given the proper medicine necessary for his rehabilitation."  *Id.* at 3.

### b.  Defendant Kruger

Plaintiff's claims against Defendant Kruger seem to arise out of two events.  First, Plaintiff alleges that "[i]n team or other disciplinary meetings, [Plaintiff is] not allowed an inmate interpreter.  [Plaintiff is] not fluent in English or a native English speaker.[3]  [Plaintiff's] English is limited yet Counselor Kruger is qualified to determine my fluency and refuses me an interpreter."  Compl. at 6.

Second, Plaintiff alleges in his attached affidavit as follows:  He was placed in segregation in October 2009.  Aff. Vazquez, at ¶ 10.  After Plaintiff was discharged from segregation, Defendant Kruger transferred Plaintiff's work assignment from the hobbycraft shop (or an "apprenticeship" position) to "food service" (or the kitchen).[4]  *Id.* at ¶¶ 10-12.  Defendant Kruger told Plaintiff that he did not belong in the hobbycraft shop because he had a "detainer" against him and would be deported following his release; therefore, Defendant Kruger concluded that Plaintiff was ineligible for an apprenticeship

---

[3]  Plaintiff repeatedly states throughout his Complaint and attachments that his native country is Mexico and he received dentistry training and credentials in Mexico.  *See*, *e.g.*, Aff. Vazquez, at ¶¶ 1-7.

[4]  Plaintiff also makes general allegations about his employment. Plaintiff alleges that he was fired from his position as a nurse attendant, and the prison hired three new people.  Aff. Vazquez, at ¶ 29.  Plaintiff alleges that he worked at a "Grade I" level at the time he was discharged, and there were four other people had his grade.  *Id.* at ¶ 30.

in the hobbycraft shop. *Id.* at ¶ 12. Plaintiff was required to stand in his food service position, which aggravated his knee and ankle conditions. *Id.* at ¶ 24.  His "unit team never checked with [his] attending physician to [learn about his] medical restrictions." *Id.* at ¶ 24.  Later, he was diagnosed with plantar fasciitis and had work restrictions.  *Id.* at ¶ 31.  He was also the only person who worked in the kitchen without steel toe shoes.  *Id.* at ¶ 34.

Based upon the aforementioned allegations, Plaintiff states that "an official acts with deliberate indifference when they know that inmate Gallo is in serious need of medical care." *Id.* at ¶ 27. Plaintiff also contends that Hispanics receive inferior vocational, education, and education opportunities compared to inmates of other races. *Id.* at ¶ 19.  Consequently, Plaintiff contends that Defendant Kruger's actions were motivated by racial animus, *id.* at ¶ 22, and violated Plaintiff's right to equal protection of law under the Fourteenth Amendment of the United States Constitution. *See* Aff. Vazquez, at ¶¶ 8, 13.  Plaintiff seeks "return to his Attendant job as an Assistant, and $10,000.00 in damages." *Id.* at ¶ 37.

### c.  Defendant Greiner

Plaintiff's allegations regarding Defendant Greiner are even more difficult to follow than his allegations against Defendants Nagel and Kruger.  Plaintiff alleges as follows:  He sent an affidavit to "everyone (sic) of the people who was (sic) implicate[d] in [his] case" stating that they must respond to the affidavit.  *See* Docket No. 1-1, at 5 of 10.  Thereafter, Plaintiff filed a "Notice of Default" and demanded "payment for [f]alse imprison[ment] and Clear of Record."   *Id.*   (Plaintiff characterizes his demands of

payments as commercial liens.   *Id.*)   Thereafter, Defendant Greiner "filed a[n] accusation" against Plaintiff and put him in segregation. *Id.*

Plaintiff further alleges as follows: Defendant Greiner completed an incident report stating that Plaintiff's conduct was disruptive to security and the orderly running of the facility because his conduct constituted a threat of extortion.  *Id.*  Defendant Greiner's knowledge of Plaintiff's *valid* commercial code liens raises Plaintiff's concern for his physical safety because Defendant Greiner was not "implicate[d] in this case" and Plaintiff's liens were only mentioned in a certified letter.  *Id.* at 5-6 of 10.   Defendant Greiner read and interfered with "inmate[']s privilege mail, and plac[ed] an inmate in Segregation."  *Id.* at 9 of 10.   Everything Defendant Greiner said is "circumstantial" and "not enough to prove evidence of guilt."  *Id.* at 6 of 10.

Based upon the aforementioned allegations, Plaintiff contends that Defendant Greiner violated his right to be free from unreasonable searches and his rights under the First Amendment of the United States Constitution by "reading or interfering with an inmate's legal papers, and placing an inmate in segregation" in retaliation.  *Id*. at 6 of 10; *see also* Aff. Vazquez, at ¶ 32.   Plaintiff further contends that Defendant Greiner conspired to violate 28 U.S.C. §§ 241 and 924.   Compl. at 6 of 10; Docket No. 1-1. Plaintiff also contends that Defendant Greiner defamed Plaintiff.   *Id.* at 7 of 10. Following these claims, Plaintiff *demands* the following: "false imprison (sic) and Clear of my Record," "Malicious Prosecution," "False Imprisonment," "Expungement of Record," "Cleared of Unlawful Arrest," "cease, desist and refrain from taking action in the above reference matter without liability therefore," "all government official to protect

me and mine in my peaceful exercise of enjoyment of my rights, privileges, privac[y]."

*Id.* at 7 of 10. This Court cannot discern if Plaintiff is asserting this litany of legalese as causes of action or requested relief.

### d. Record from Defendants' Motion to Dismiss

Defendants support their motion with the declaration of Dennis Bitz. Docket No. 25. Dennis Bitz avers as follows:

> 5.      . . . . The plaintiff has not filed any remedy requests under the IARP in which he alleged that defendant Nagle harassed him, used unjustified force, abused his authority, retaliated against him and engaged in cruel and unusual punishment when he ordered one or more correctional officers to search the plaintiff's room and seize property from the plaintiff because he filed grievances, a claim for loss of property or he attempted to enforce a commercial lien against [Bureau of Prison (BOP)] officials. . . .

> 6.      The plaintiff did file a claim for loss of property (TRT-NCR-2010-04675) under 31 U.S.C. 3723 to recover $360 for the loss of a gold necklace on May 25, 2010. This loss of property claim was investigated and formally denied on July 8, 2010. Although the plaintiff requested reconsideration of the claim, he was advised on August 6, 2010, by the Regional Counsel that the previous decision denying the claim would not be changed.

> 7.      The plaintiff has not filed a claim to recover damages under 31 U.S.C. 3723 concerning the confiscation of a watch from his property on September 24, 2010, by a correctional officer who confiscated the watch because Nagle allegedly told him to do so. The plaintiff has not filed a claim under the statute concerning Nagle's failure to return the watch to the plaintiff after the plaintiff allegedly provided Nagle with evidence that he owned the watch. In addition, he has not filed a claim under the Federal Tort Claims Act (FTCA) for intentional infliction of emotional distress by Nagle due to repetitive cell searches, confiscation of his property or conversion of his property by Nagle.

8.      The plaintiff was disciplined by a Disciplinary Hearing Officer (DHO) on November 29, 2010, after he received an incident report for committing a prohibited act. The incident report forming the basis for the discipline was issued on May 10, 2010, because the plaintiff mailed a letter to the Director of the BOP on March 18, 2010, in which he notified the Director he had defaulted on a commercial lien the plaintiff had previously presented to the Director. The letter was received on April 5, 2010.   Following the DHO hearing which was conducted on May 25, 2010, the plaintiff was sanctioned with loss of 27 days of good conduct time as well as loss of privileges.

9.      . . . . My review of IARP records established that the plaintiff filed an appeal to the Regional Director and his appeal was denied. . . . However, the plaintiff did not file an appeal to the General Counsel of the BOP. . . .

10.     . . . . Documents attached to the complaint establish that the plaintiff attempted to use a secured party commercial lien procedure when he wrote to the Director and notified the Director that he had to rebut the plaintiff's allegations about false imprisonment or pay the plaintiff $1.6 million per day for each day of his wrongful incarceration. My review of BOP IARP records established that the plaintiff did not file a remedy request under the IARP with the Warden on these issues. . . .

11.     In his complaint, the plaintiff alleged that defendant Kruger engaged in racial discrimination because he changed the plaintiff[']s prison work assignment from a position as a nursing attendant to a position in food service. . . . .

12.     My review of the IARP records maintained by the BOP established that the plaintiff did file remedy request 577228 on February 18, 2010, in which he complained about the change in his work assignment and he also complained that work assignment irritated his chronic knee and ankle condition and caused pain.  He alleged that Kruger engaged in deliberate indifference and acted with "frivolous and malicious intent." He asked to be reinstated to his prior work assignment. The plaintiff never alleged that Kruger engaged

in racial discrimination when the work assignment was
changed and he never alleged that other inmates were treated
differently from him. The Warden responded to the request
on February 23, 2010, and advised the plaintiff that his work
assignment was changed to meet institutional needs and a
medical restriction for no prolonged standing was added to
his work restrictions. . . .

13.     In his appeal to the Regional Director for remedy
577228, the plaintiff alleged for the first time that Kruger
engaged in racial discrimination and disability discrimination
as well as deliberate indifference. The Regional Director
denied the plaintiff's appeal because insufficient evidence was
submitted to support the allegations of wrongdoing. In
addition, the Regional Director noted that BOP had discretion
to make inmate work assignments in the best interest of the
prison.

14.     The plaintiff filed an appeal from the Regional
Director's decision with the General Counsel. In his appeal,
the plaintiff alleged that Kruger engaged in racial
discrimination and deliberate indifference because his work
assignment was changed due to his deportation detainer and
because he is Hispanic. He identified for the first time the
inmates who were treated differently from him but he never
identified if defendant Kruger was the counselor for all of the
inmates. He alleged he was provided with inferior vocational,
educational and employment opportunities due to the
immigration detainer that was lodged against him. The
National Inmate Appeals Administrator for the BOP denied
the appeal on December 29, 2010.

Decl. Bitz, at ¶¶ 5-14, Apr. 6, 2011.

## III.   ANALYSIS

Defendants filed Motion to Dismiss (Docket No. 23), arguing as follows:

Plaintiff's claims against Defendant Greiner should be dismissed for lack of personal

jurisdiction; sovereign immunity bars all constitution claims against Defendants in their

official capacities; Plaintiff failed to exhaust his administrative remedies; Plaintiff's

claims against Defendants in their individual capacities should be dismissed because Plaintiff fails to state plausible constitutional claims; and Defendant Kruger is entitled to qualified immunity.

Prior to considering Defendants' arguments, it is necessary in the present action to construe what claims are at issue in the present action. Thereafter, this Court will consider the arguments of Defendants as set forth above.  It is unnecessary, however, to consider all of Defendants' arguments to grant Defendants' Motion to Dismiss (Docket No. 23) because, for the reasons set forth below, (1) Plaintiff's claims against Defendant Greiner should be dismissed for lack of personal jurisdiction; (2) sovereign immunity bars all constitution claims against Defendants in their official capacities; (3) Plaintiff failed to exhaust his administrative remedies as to all claims at issued except Plaintiff's claim against Defendant Kruger for violation of Plaintiff's Eighth Amendment rights; and (4) Plaintiff's Eighth Amendment claim against Defendant Kruger should be dismissed for failure to state a claim upon which relief can be granted and failure to raise a genuine issue of material fact.

### a.  Recognized Claims

Plaintiff's Complaint is difficult to understand and includes numerous attachments, which do little to elucidate his allegations.   Consequently, prior to addressing Defendant's Motion to Dismiss, this Court will construe what claims are presented in Plaintiff's Complaint.

Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596 (1972).

Therefore, this Court must construe Plaintiff's "pleadings with the utmost liberality and without regard for technicalities."[5]   *Wallach v. City of Pagedale, Mo.*, 359 F.2d 57, 58 (8th Cir. 1966).   "Even so, defendants are entitled to know the extent of the claim against them as well as its precise nature."   *Id.*

As to Defendant Nagel, Plaintiff is only asserting a claim under the Eighth Amendment of the United States.   Consequently, Plaintiff's claim against Defendant Nagel shall be analyzed under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S. Ct. 1999 (1971), and its progeny.

As to Defendant Kruger, Plaintiff explicitly asserts a claim under the equal protection clause of the Fourteenth Amendment, which this Court interprets as an equal protection claim of under the Fifth Amendment.[6]   This Court also recognizes an Eighth Amendment claim premised upon Plaintiff's work reassignment.   Consequently, Plaintiff's claims against Defendant Kruger shall be analyzed under *Bivens*, 403 U.S. 388, 91 S. Ct. 1999, and its progeny.

---

[5] This Court notes that, after Plaintiff commenced the present action, this District published: *Prisoner Civil Rights Federal Litigation Guidebook.* United States District Court for the District of Minnesota, *Prisoner Civil Rights Federal Litigation Guidebook* (Nov. 2011).

[6] The Fourteenth Amendment applies only to states. *See generally* U.S. Const. amend. XIV. The United States Supreme Court has held that there is an implied "equal protection component" applicable to the federal government within the Fifth Amendment.   *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S. Ct. 693 (1954). Plaintiff appears to recognize this distinction in his Memorandum of Law in Opposition to Defendants' Motion to Dismiss. *See* Pl.'s Mem. at 4 of 30.

As to Defendant Greiner, Plaintiff is only asserting constitutional claims under the First and Fourth Amendments of the United States Constitution. These claim will be analyzed under *Bivens*, 403 U.S. 388, 91 S. Ct. 1999, and its progeny.  Plaintiff is also asserting against Defendant Greiner the common law torts of defamation, malicious prosecution, and false imprisonment.[7]

### b.  Service and Personal Jurisdiction

Defendants move under Fed. R. Civ. P. 12(b)(2) and 12(b)(5) to dismiss Plaintiff's claims against Defendant Greiner. For the reasons set forth herein, this Court recommends that Plaintiff's claims against Defendant Greiner in his individual capacity be dismissed under Fed. R. Civ. P. 12(b)(2) and 12(b)(5).[8]

"If a defendant is improperly served, a federal court lacks jurisdiction over the defendant." *Printed Media Services, Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). "Because *Bivens* actions are filed against federal officers in their individual capacities, [the Plaintiff] was required to serve the individual defendants in the manner prescribed by Federal Rule of Civil Procedure 4(e)." *Stackhouse v. United States*, Civil No. 09-839 (PJS/JSM), 2011 WL 820885, *4 (D. Minn. Feb. 11, 2011), *adopted* (Mar. 1, 2011). An individual can also waive service under Fed. R. Civ. P. 4(d). Absent good cause shown, "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action

---

[7] Plaintiff has other "claims" against Defendant Greiner that are not recognized causes of action.

[8] Plaintiff's claims against Defendant Greiner in his official capacity will be addressed later.

without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

In the present action, Plaintiff's second application to proceed *in forma pauperis* was granted; Plaintiff was ordered to complete a Marshal Service Form, USM-285, for each Defendant to be served in this matter; and the Marshal Service was ordered to "take all action necessary to effect valid service of process, pursuant to Fed. R. Civ. P. 4, on those Defendants for whom Plaintiff has submitted a properly completed . . . service form." Docket No. 9. The Clerk of Court issued a Summons as to Mr. C. Greiner, listing his address as 2110 East Center Street, Rochester, MN 55903. Docket No. 14. Thereafter, Plaintiff submitted a Marshal Service Form that stated only that "Mr. C. Greiner" "is [an] employee of the B.O.P." *Id.* Upon inquiry by the U.S. Marshal Service, Dennis Bitz confirmed that C. Greiner is neither on staff with BOP in Rochester, Minnesota nor does C. Greiner live in Rochester, Minnesota. *Id.* Thus, the Marshal Service was unable to locate Defendant C. Greiner and was, therefore, unable to serve the Summons and Complaint on Defendant C. Greiner.

Plaintiff offers no evidence or argument to contest the aforementioned record. Furthermore, Plaintiff has not shown good cause to extend the time for service. The U.S. Marshal Service is responsible for service, but Plaintiff was responsible for properly identifying the defendants to be served as well as providing a proper address for service. Consequently, this Court concludes that service against Defendant Greiner has not been perfected under Fed. R. Civ. P. 4(d) or 4(e), and the Court lacks personal jurisdiction over

Defendant Greiner.   Thus, this Court recommends that claims against Defendant Greiner in his individual capacity be dismissed under Fed. R. Civ. P. 12(b)(2) and 12(b)(5).

### c.   Standard of Review for Remaining Issues

A complaint should be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).   A complaint that is challenged on a motion to dismiss does not need to contain detailed factual allegations to survive the motion, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).   The court must analyze whether the plaintiff has put forth factual allegations that "raise the right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545, 127 S. Ct. at 1959. While federal courts must "view *pro se* pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

Defendants' motion is entitled "Motion to Dismiss."   Docket No. 23.   The Motion to Dismiss states that it comes under Federal Rule of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6).   *Id.*   Nevertheless, Defendants' Memorandum of Law states that in the alternative Defendants' are seeking summary judgment.   Docket No. 24.   Defendants supported their motion to dismiss with declarations and attachments. *See* Docket Nos. 25, 26.   As a general rule, because a motion to dismiss tests the adequacy of the pleadings, no materials beyond the pleadings can be considered in ruling upon the motion to dismiss

without altering the motion to one for summary judgment under Fed. R. Civ. P. 56.  Fed. R. Civ. P. 12(d).

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).  When a motion for summary judgment has been made and supported by the pleadings and affidavits, the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986).

### d.  Sovereign Immunity

Defendants contend that Plaintiff's constitutional claims for monetary damages against Defendants in their official capacities should be dismissed based upon the doctrine of sovereign immunity.[9]  "It is well settled that 'an official-capacity suit is, in all

---

[9] Throughout Defendants' motion papers, Defendants propose that Plaintiff may be seeking declaratory relief and a writ of mandamus in addition to the monetary relief against Defendant.  *See* Defs.' Mem., at 7, 17.  Defendant contends that some of Plaintiff's claims appear to be an effort to obtain relief in the nature of mandamus under 28 U.S.C. § 1361, and that these claims should be dismissed for failure to plead subject-matter jurisdiction.  *Id.* This Court does not need to reach this issue. First, Plaintiff does not ask for a writ of mandamus in his Complaint and Plaintiff does not assert that he is seeking such relief in his Memorandum in Opposition to Defendants' Motion to Dismiss. Second, this Court has inherent authority to provide Plaintiff prospective relief under 28 U.S.C. § 1331.  *See generally Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005) (holding that sovereign immunity does not bar claims for injunctive relief against prison officials in their official capacity).  Therefore, this Court concludes that Plaintiff's

respects other than name, to be treated as a suit against the entity.'" *Buford v. Runyon*, 160 F.3d 1199, 1201 n.3 (8th Cir. 1998) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099 (1985)). "It is [also] well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *Id.* at 1203. Plaintiff's claims against Defendants Nagel and Kruger in their official capacity are barred by sovereign immunity. Likewise, Plaintiff's claim against Defendant Greiner in his official capacity for Defendant Greiner's alleged violation of Plaintiff's First and Fourth Amendment rights are barred by sovereign immunity. Therefore, this Court recommends that Plaintiffs' constitutional claims for monetary damages against Defendants in their official capacities be dismissed with prejudice.

### e. Exhaustion of Administrative Remedies

Defendants contend that Plaintiff has failed to exhaust his administrative remedies for most of his claims. For the reasons set forth below, this Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether he exhausted his administrative remedies prior to bringing this suit for all claims against Defendants Nagel and Greiner and his equal protection claim against Defendant Kruger. Because the time for pursuing his administrative remedies has lapsed, this Court recommends that these claims be dismissed with prejudice.

The Prison Litigation Reform Act (PLRA) precludes actions "brought with respect to prison conditions" under "[f]ederal law, by a prisoner . . . until such administrative

---

constitutional claims against Defendants in their official capacities, which seek prospective relief, are not barred by sovereign immunity.

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[P]rison conditions" constitutes "'the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison.'" *Castano v. Nebraska Dept. of Corrections*, 201 F.3d 1023, 1024 (8th Cir. 2000) (quoting 18 U.S.C. § 3626). The exhaustion requirement set forth in § 1997e(a) applies to *Bivens* actions. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983 (2002). "[T]he assertion that a plaintiff prisoner failed to exhaust all available administrative remedies as required under the PLRA is an affirmative defense under Fed. R. Civ. P. 8(c). It is the burden of the defendant asserting this affirmative defense to plead and prove it." *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001).

The BOP has an Inmate Administrative Remedy Program (IARP). *See* 28 C.F.R. §§ 542.10-.18. The IARP contemplates a number of steps: Initially, the inmate shall present the issue to the facility's staff for informal resolution. *Id.* at § 542.13. Next, the inmate shall submit an Administrative Remedy Request to the Warden if the inmate is unsatisfied by how the issue is informally addressed by the staff. *Id.* at § 542.14. Thereafter, the inmate shall submit an appeal to the appropriate Regional Director if the inmate is unsatisfied with the Warden's response to his Administrative Remedy Request. *Id.* at § 542.15(a). Ultimately, the inmate shall submit an appeal to the General Counsel if the inmate is unsatisfied with the Regional Director's response to his appeal. *Id.* Each step in sequential process has a submission deadline. The administrative claims are exhausted when this final appeal has been denied.

The PLRA requires that "[a]ll 'available' remedies must . . . be exhausted." *Porter*, 534 U.S. at 524, 122 S. Ct. at 988. A claim brought under *Bivens* is a distinct cause of action from a claim brought pursuant to the Federal Tort Claim Act (FTCA). *Cf. Washington v. Drug Enforcement Admin.*, 183 F.3d 868, 873 (8th Cir. 1999) (holding that a plaintiff cannot bring a constitutional tort claim under the FTCA). The FTCA has a separate statutory scheme, *see* 28 U.S.C. §§ 1346, 2671 *et seq.*, and 31 U.S.C. § 3723, which includes a separate exhaustion requirement, *see* 28 U.S.C. § 2671(a), which is jurisdictional. *Borntrager v. Stevas*, 772 F.2d 419, 421 (8th Cir. 1985). Thus, the BOP has a separate administrative process that inmates must exhaust before bringing an FTCA claim. *See* 28 C.F.R. §§ 543.30-.32; *see also* 28 C.F.R. §§ 14.1-.11. Exhaustion of the administrative process for an FTCA claim will not serve the exhaustion requirement under the PLRA. *See Plummer v. Debbo*, C/A No. 6:10–1224–MBS–WMC, 2010 WL 6749074, *2 (Dist. S.C. May 26, 2010) (holding that the administrative remedies set forth under 28 C.F.R. §§ 542.10-.18 must be followed even if an inmate has pursued a small claims settlement under 31 U.S.C. § 3723); *Carrie v. Rios*, Civil Action No. 08-CV-13-KKC, 2008 WL 320329, *1 (E.D. Ky. Feb. 4, 2008) (stating that pursuing a request for administrative settlement under the FTCA does not negate the requirement to exhaust the administrative remedies set forth in 28 C.F.R. §§ 542.10-.18).

### i. *Defendant Nagel*

Plaintiff has failed to raise a genuine issue of material fact that he exhausted his administrative remedies prior to initiating the present action against Defendant Nagel. Mr. Bitz attests that Plaintiff never pursued an IARP claim regarding Defendant Nagel's

actions.  Decl. Bitz at ¶¶ 4-5.  Mr. Bitz also attests that Plaintiff only filed a claim for loss

of his gold chain under the administrative provisions applicable to an FTCA claim. *Id.* at

¶ 6; *see also* Docket No. 1-2, at 7 of 92. Finally, Mr. Bitz attests that Plaintiff did not

pursue an IARP claim regarding any other searches or confiscation of his property, such

as the watch.  *Id.* at ¶ 7. Plaintiff's arguments in his Memorandum of Law in Opposition

to the Motion to Dismiss do not negate any of Mr. Bitz's averments. *See* Pl.'s Mem. in

Opp. at 7 of 30. Consequently, Defendant Nagel is entitled to summary judgment because

there is no genuine issue of material fact that Plaintiff did not exhaust his administrative

remedies prior to initiating his action against Defendant Nagel. Therefore, Defendants'

Motion to Dismiss should be granted as to all claims against Defendant Nagel.

### ii.   Defendant Greiner

Plaintiff has failed to raise a genuine issue of material fact that he exhausted his

administrative remedies prior to initiating the present action against Defendant Greiner.

Mr. Bitz attests that Plaintiff did not exhaust his administrative remedies prior to bringing

the present action against Defendant Greiner.  Decl. Bitz, at ¶¶ 8-10.  Plaintiff's

Memorandum of Law in Opposition to the Motion to Dismiss, again, fails to raise a

genuine of material fact as to Mr. Bitz's assertions.  *See* Pl.'s Mem. in Opp. at 8-10 of 30.

Therefore, Defendant's Motion to Dismiss should be granted as to all claims against

Defendant Greiner.

### iii.   Gunnar Kruger

Plaintiff's complaints against Defendant Kruger can be analyzed in two parts—

one, relating to Plaintiff's Eighth Amendment claim, and the other, relating to Plaintiff's

non-Eighth Amendment claims.  Defendants assert that Plaintiff has only exhausted his administrative remedies as to his Eighth Amendment claim regarding his work reassignment.   With respect to Plaintiff's non-Eighth Amendment complaints, Defendants acknowledge that Plaintiff followed each step of the IARP for other complaints against Defendant Kruger; but, Defendants contend that Plaintiff did not exhaust his administrative remedies because he made different arguments at each step in the IARP.  For the reasons set forth below, this Court agrees that Plaintiff raised a genuine issue of material fact that he exhausted the administrative remedies as to his Eighth Amendment claim,[10] but this Court concludes that Plaintiff failed to raise a genuine issue of material fact that he exhausted his administrative remedies regarding his equal protection claim prior to initiating the present action against Defendant Kruger.

Mr. Bitz's declaration and its attachments support as follows: Plaintiff sent an Administrative Remedy Request to the Warden on January 26, 2009. Decl. Bitz, at Attachment B.   Plaintiff asserted that Counselor Kruger acted with "frivolous and malicious" intent and violated Plaintiff's Eighth Amendment rights by not reassigning Plaintiff to his previous job following administrative segregation and by assigning Plaintiff to food services where standing aggravates his health conditions. *Id.* After receiving a response from the Warden, Plaintiff filed an appealed and stated, "Counselor Kruger shall not descriminate (sic) against or preclude qualified inmates with a disability from participating in work programs" and that Defendant Kruger discriminated against

---

[10]   Plaintiff's Eighth Amendment claim against Defendant Kruger will be addressed in the following section of this Report and Recommendation.

Plaintiff based upon nationality by telling Plaintiff that he could not participate in the apprentice program because he had an "emigration detainer." *Id.* Plaintiff also stated in his appeal that Defendant Kruger violated Plaintiff's Eighth Amendment rights when he assigned Plaintiff to a position in which he suffered prolonged and extreme knee and ankle pain on his new job. *Id.*

The Regional Director stated in part that Plaintiff had failed to support his claim of staff malfeasance. *Id.* Thereafter, Plaintiff appealed to the Office of General Counsel. *Id.* Plaintiff asserted in his appeal that his assignment to inferior programs was the result of discrimination and that Hispanics receive inferior vocational, educational, and employment opportunities. *Id.* As a result of discrimination, Plaintiff works in food service where he must constantly stand, which aggravates his medical conditions. *Id.* Plaintiff also alleged that he was not provided with steel toe boots. *Id.* The General Counsel's Office responded that "[w]e do not find, nor have you provided, any evidence to support your allegation of racial discrimination in this matter." *Id.* The General Counsel's office also noted Plaintiff was reassigned to a different work assignment, making his claims regarding food service moot. *Id.*

Based upon the record above, this Court concludes that Plaintiff has raised a genuine issue of material fact that he exhausted his administrative remedies regarding his Eighth Amendment claim in relation to his work reassignment. At each stage in the IARP process, Plaintiff asserted that his work assignment aggravated his medical condition and violated his Eighth Amendment rights.

In contrast, this Court concludes that Plaintiff has not raised a genuine issue of material fact that he exhausted his administrative remedies regarding his equal protection claim.  First, Plaintiff did not present his equal protection claim at each stage of the IARP. Plaintiff did not present the issue to the warden and raised Defendant Kruger's statement concerning work assignments and detainers for the first time in his initial appeal. Plaintiff only asserted that Hispanics were treated differently during his appeal to the Office of General Counsel. Permitting an inmate to raise new arguments at each step in the IARP would negate the purpose of the IARP process. "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25, 122 S. Ct. 983 (2002).

Second, the character of Plaintiff's equal protection claim as presented to this Court differs from the claim present in the IARP process.  *Cf. King v. Iowa Dept. of Corrections*, 598 F.3d 1051, 1053 (8th Cir. 2010) (holding that a PLRA claim was not exhausted where the plaintiff's complaint asserted either a new grievance or a new request for relief for a grievance that was never exhausted).  While Plaintiff re-alleges that Defendant Kruger discriminated against Plaintiff on the basis of his detainer, Plaintiff for the first time alleges that he was denied an interpreter during a counseling session and Plaintiff for the first time alleges names of similarly situated individuals who were treated differently.  In short, Plaintiff did not present his full equal protection claim at each stage of the IARP process.

Plaintiff seems to raise two arguments in opposition to the motion. From Plaintiff's Memorandum of Law in Opposition to the Motion, Plaintiff outlines several attempts to resolve his complaints against Defendant Kruger informally. *See* Pl.'s Mem. in Opp. at 2-4, June 6, 2011. Plaintiff also raises new claims against Defendant Kruger. *See* Pl.'s Mem. in Opp. at 3-6: Plaintiff's attempts at informal resolution and new contentions do not raise a genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies regarding his equal protection claim before bringing this action.

Plaintiff also argues that he is not fluent in English and, therefore, could not avail himself of the administrative remedies. *Id.* at 6. This argument was rejected by the Eighth Circuit Court of Appeals in *Castano v. Nebraska Dept. of Corrections*, 201 F.3d 1023, 1025 (8th Cir. 2000). Moreover, this argument is contradicted by the fact that Plaintiff pursued his administrative remedies successfully as to his Eighth Amendment claim.

### f.   Failure to State a Claim & Qualified Immunity

#### i.   *Eighth Amendment Claim against Defendant Kruger*

As noted above, this Court has concluded that Plaintiff exhausted his administrative remedies as to his Eighth Amendment claim against Defendant Kruger. Defendants move to dismiss or, in the alternative, for summary judgment on Plaintiff's Eighth Amendment claim.  For the reasons set forth below, this Court concludes that Defendants' Motion to Dismiss should be granted as to this claim.

The United States Supreme Court held that:

> deliberate indifference to serious medical needs of prisoners
> constitutes the unnecessary and wanton infliction of pain,
> proscribed by the Eighth Amendment. This is true whether
> the indifference is manifested by . . . prison guards in
> intentionally denying or delaying access to medical care or
> intentionally interfering with the treatment once prescribed.

*Estelle v. Gamble*, 429 U.S. 97, 104-105, 97 S. Ct. 285, 291 (1976).   As the Eighth

Circuit Court of Appeals explains:

> An Eighth Amendment claim that prison officials were
> deliberately indifferent to the medical needs of inmates
> involves both an objective and a subjective component. The
> plaintiffs must demonstrate (1) that they suffered objectively
> serious medical needs and (2) that the prison officials actually
> knew of but deliberately disregarded those needs. Because
> society does not expect that prisoners will have unqualified
> access to health care, deliberate indifference to medical needs
> amounts to an Eighth Amendment violation only if those
> needs are "serious."[11] The failure to treat a medical condition
> does not constitute punishment within the meaning of the
> Eighth Amendment unless prison officials knew that the
> condition created an excessive risk to the inmate's health and
> then failed to act on that knowledge. As long as this threshold
> is not crossed, inmates have no constitutional right to receive
> a particular or requested course of treatment, and prison
> doctors remain free to exercise their independent medical
> judgment. Deliberate indifference may be demonstrated by
> prison guards who intentionally deny or delay access to
> medical care or intentionally interfere with prescribed
> treatment, . . . .   Mere negligence or medical malpractice,
> however, are insufficient to rise to a constitutional violation.

*Dulany v. Carnahan*, 132 F.3d 1234, 1237-39 (8th Cir. 1997) (quotations and citations

omitted) (footnote added).

---

[11] A serious medical need is a need that has been diagnosed by a physician as requiring treatment or that is so obvious that the necessity for professional attention would be easily recognized by a layperson. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

Plaintiff failed to state an Eighth Amendment claim upon which relief can be granted because Plaintiff did not allege any facts to support that Defendant Kruger knew about Plaintiff's knee and ankle conditions, or knew that food service duty would aggravate these conditions, at the time Defendant Kruger assigned Plaintiff to food service. Plaintiff only alleges that the unit team—of which Defendant Kruger was a member—failed to check with Plaintiff's doctor concerning Plaintiff's work restrictions. At most this allegation amounts to a claim of negligence, which is not actionable under the Eighth Amendment.

Furthermore, Plaintiff failed to raise a genuine issue of material fact concerning Defendant Kruger's Eighth Amendment claim. Plaintiff states in his Memorandum in Opposition to the Motion to Dismiss that "Mr. Kruger had knowledge of my injuries and medical problems." Pl.'s Mem. in Opp. at 6 of 30. But, a "[c]onclusory affidavit[], standing alone, cannot create a genuine issue of material fact precluding summary judgment." *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998). Moreover, Defendant Kruger avers that he had no knowledge of Plaintiff's condition, Decl. Kruger at ¶ 7, and there is no medical record of Plaintiff's condition from November 2009 when Plaintiff was assigned to food services. *Id.*

For the reasons set forth above, this Court recommends that Plaintiff's Eighth Amendment claim against Defendant Kruger be dismissed with prejudice.

ii. *Equal Protection Claim against Defendant Kruger*

If the recommendation concerning the exhaustion of administrative remedies, from section III(e)(*iii*) of this Report and Recommendation, is adopted, then the Court does not

need to consider Defendants' contention that Defendant Kruger is entitled to qualified immunity as to Plaintiff's equal protection claim.   For purposes of completeness, however, and in the event such earlier recommendation is not adopted, this Court presents Defendants' qualified immunity argument.

To support their qualified immunity argument, Defendants simply argue that (1) Plaintiff has provided no evidentiary support for his contention that Defendant Kruger violated his constitutional rights, and (2) Defendant Kruger had a legitimate, nondiscriminatory reason for assigning Plaintiff to food service.   But, both of these arguments fail to address Plaintiff's allegation that Defendant Kruger told Plaintiff that he was not considered for certain work assignments on the basis of race or national origin. This allegation is the gravamen of Plaintiff's equal protection claim and this is the allegation that any qualified immunity defense must address.   It is notable that there has been no briefing on this issue by either side, and in the absence of such briefing this Court declines to conduct such an analysis or conclude that Defendant Kruger is entitled to qualified immunity.   Therefore, in the event that the earlier recommendation is not adopted, this Court recommends that Defendants' Motion to Dismiss be denied as to Plaintiff's equal protection claim against Defendant Kruger.

### iii.   Defendant Nagel

If the recommendation concerning the exhaustion of administrative remedies, from section III(e)(*i*) of this Report and Recommendation, is adopted, then the Court does not need to consider Defendants' contention that Plaintiff failed to state an Eighth Amendment claim upon which relief can be granted against Defendant Nagel. In the

event that the earlier recommendation is not adopted, then this Court recommends that Defendants' motion with respect to this claim should be denied as to Defendant Nagel.

The Eighth Circuit Court of Appeals has held that "the scope of eighth amendment protection is broader than the mere infliction of physical pain . . . and evidence of fear, mental anguish, and misery inflicted through frequent retaliatory cell searches . . . could suffice as the requisite injury for an eighth amendment claim." *Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991). Plaintiff alleged two searches occurred during a six-month period. Plaintiff alleges that the searches were ordered by Defendant Nagel. Plaintiff alleges that his property was confiscated in both instances. This Court notes that the BOP's regulations permit inmates to possess "one approved watch." 28 C.F.R. § 553.11(f). Thus, Plaintiff has alleged an Eighth Amendment claim upon which relief could be granted.

### iv. *Defendant Greiner*

This Court does not reach Defendant's arguments that Plaintiff failed to state a claim against Defendant Greiner upon which relief can be granted because this Court has concluded that Defendant Greiner has not been served and, even if Defendant Greiner had been served, Plaintiff failed to exhaust his administrative remedies with respect to his claims against Defendant Greiner.

## IV.    RECOMMENDATION

Based upon the record and memoranda, **IT IS HEREBY RECOMMENDED** that

1.      Defendants' Motion to Dismiss (Docket No. 23) be **GRANTED**;

2.      Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**; and

3.      The Clerk of Court be directed to enter judgment accordingly.


Dated: <u>February 13, 2012</u>

<u>s/ Tony N. Leung</u>

Magistrate Judge Tony N. Leung

United States District Court

CASE NO. 10-4217 (JNE/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **February 28, 2012**.